IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 3:24-cr-240 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES R. KNEPP, II |
| | ) | |
| v. | ) | |
| | ) | |
| DANNIE WIREMAN, III, | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

Now comes the United States of America, by and through its counsel, Carol M. Skutnik, Acting United States Attorney for the Northern District of Ohio, and Dexter L. Phillips, Assistant United States Attorney, and submits the following Sentencing Memorandum. For the reasons given below, the Court should sentence Wireman to a prison term of 96 months.

I.     FACTUAL BACKGROUND

  A.  Wireman's offense conduct.

On September 14, 2009, in the Jasper Superior Court, located in Rensselaer, Indiana, Dannie Wireman was convicted of Burglary, a class B felony, under Indiana Code § 35-43-2-1, and was sentenced to six years in the Indiana Department of Corrections. (R.16: Final PSR, PageID# 85.).

Subsequently, on March 6, 2024, the United States Department of Agriculture (USDA), with the assistance of ATF, Williams County Sheriff's Office, and the Ohio Department of Natural Recourses, executed a federal search warrant at the residence of Dannie Wireman, located in Williams County, Ohio 43518 (the "residence"). (R.16: Final PSR, PageID# 79.). Wireman, his wife, and 13-year-old stepson were present at the residence at the time agents

executed the search warrant. (*Id*.). Wireman used expletive language and told law enforcement that they were not allowed to conduct the search. (*Id*.).

Inside the residence, ATF agents discovered 22 firearms and assorted ammunition. (*Id*.). Agents found 21 firearms inside a safe located in the master bedroom. (*Id*.). Wireman provided agents with the combination to the safe. Agents also found one firearm inside a closet located in the master bedroom. Wireman told agents that the firearms belonged to his 13-year-old son for hunting. Most of the ammunition was in plain view on top of the safe in the master bedroom.

Agents found additional loose rounds of ammunition on the dresser and other parts of the master bedroom. Agents also found several rounds of mixed ammunition located in the camper that was behind the residence. Below is a photograph taken at the residence depicting the firearms the agents recovered from the residence:



2

Below is a chart depicting an itemized inventory of the firearms recovered at the residence, including the sawed-off shotgun (Item 20).

| Item # | Make/Model | Serial # | Location Found |
|---|---|---|---|
| 1 | Mossberg 20 gauge shotgun | D37960 | Safe |
| 2 | Stevens 12 gauge shotgun | None | Safe |
| 3 | Ruger .22 caliber rifle | 183830 | Safe |
| 4 | Remington 12 gauge shotgun | | Safe |
| 5 | Mossberg 20 gauge shotgun | R817184 | Safe |
| 6 | Mossberg 20 gauge shotgun | K961473 | Safe |
| 7 | Model 39 A Rifle | P31749 | Safe |
| 8 | Sporter Mag 209 Muzzle loader | 14-13-030257-06 | Safe |
| 9 | S&W Model 1000 Shotgun | FB57123 | Safe |
| 10 | Western Field XNH 480H | None | Safe |
| 11 | Remington 370 Shotgun | S504585V | Safe |
| 12 | Taurus Model 62 | UE9431 | Safe |
| 13 | Remington 12 gauge shotgun | 508091 | Safe |
| 14 | H&R Model 865 .22 cal. rifle | 13075 | Safe |
| 15 | White Powder Wonder shotgun | None | Safe |
| 16 | Remington 597 .22 cal. rifle | D2909310 | Safe |
| 17 | Ruger 450 Bushmaster | 690836898 | Safe |
| 18 | Sears 12 gauge shotgun | None | Safe |
| 19 | Long Tom shotgun | 156169 | Safe |
| 20 | Harrington sawed-off-shotgun | A1760 | Safe |
| 21 | Whitworth rifle | B271107 | Safe |
| 22 | Buckhorn Mag .50 cal. Muzzle loader | 61-13-027420-13 | Bedroom Closet |
| 23 | Assorted Ammo approx. 2000 rounds | | Bedroom/camper |

Exhibit #1, the Mossberg 20 gauge shotgun, serial number D37960, and the ammunition were manufactured outside the state of Ohio. The Mossberg was test-fired and found to be operable. The ATF laboratory examined the Harrington sawed-off shotgun and determined that as modified, it is no longer designed to be fired from the shoulder; therefore, it is not a "shotgun" as defined in the NFA. (R.16: Final PSR, PageID# 79.). However, Item/Exhibit 20 is a "weapon made from a shotgun" having a barrel less than 18 inches and an overall length of less than 26 inches. (*Id.*). Thus, Exhibit 20 is a "firearm" as defined in 26 U.S.C. § 5845(a)(2), and is depicted below:



ATF agents requested a record search of the National Firearm Registration and Transfer Record for any firearms registered by Wireman or any firearms with serial number A1760 (the serial number on Exhibit 20). There were no records found for Wireman or firearms with serial number A1760.

## II.    GUIDELINE CALCULATION

The final PSR calculated a sentencing guideline range of 77 months to 96 months in prison. (*Id.*, PageID# 97). The government recommends a 96-month prison sentence.

## III.    SENTENCING FACTORS

"A sentence is substantively reasonable if it is 'proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a).'" *United States v. Robinson*, 778 F.3d 515, 519 (6th Cir. 2015) (quoting *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008)). "'[T]he Guidelines should be the starting point and the initial benchmark' for determining a substantively reasonable sentence." *Robinson*, 778 F.3d at 519 (quoting *Gall v. United States*, 552 U.S. 38, 49

4

(2007)). "If a sentence falls within a defendant's Guidelines range, for example, it's 'presumed reasonable.'" *United States v. Boucher*, 937 F.3d 702, 707 (6th Cir. 2019) (quoting *United States v. Christman*, 607 F.3d 1110, 1118 (6th Cir. 2010)).

"The court, in determining the particular sentence to be imposed, shall consider" the factors enumerated in 18 U.S.C. § 3553(a). The following paragraphs discuss the factors most pertinent to this case.

**A. The sentence should reflect the history and characteristics of the defendant. 18 U.S.C. §3553(a)(1).**

Here, Wireman is a criminal history category VI, including convictions for burglary, failure to return to lawful detention, auto theft, driving while suspended, possession of methamphetamine, battery against a public safety official, and obstruction of justice. (R.16: Final PSR, PageID# 82-89.). Wireman also has numerous unscored criminal convictions that did not count towards his criminal history category, including:

| PSR | Date | Unscored Criminal Convictions |
|---|---|---|
| ¶ 32 | 2000 | Minor-Consumption of Alcohol |
| ¶ 33 | 2003 | Possession of Marijuana |
| ¶ 34 | 2005 | Resisting Law Enforcement / Operating While Intoxicated |
| ¶ 35 | 2006 | Operating While Intoxicated with Previous Conviction |
| ¶ 36 | 2006 | Driving While License Suspended |
| ¶ 37 | 2008 | Criminal Trespass |
| ¶ 38 | 2008 | Domestic Battery |
| ¶ 41 | 2017 | Driving While Suspended |
| ¶ 42 | 2013 | Conversion |
| ¶ 43 | 2013 | Conversion |
| ¶ 45 | 2015 | Driving While Suspended |
| ¶ 46 | 2017 | Driving While Suspended |
| ¶ 52 | 2024 | Possession of Deer without tags |

(*Id.*, PageID# 82-89.); See *United States v. Herrera-Zuniga*, 571 F.3d 568, 589 (6th Cir. 2009) (upholding an upward variance where the district court found that the defendant's criminal history category underrepresented his unscored criminal history).

5

Wireman likewise has a long history of noncompliance with supervision. Wireman violated the terms and conditions of probation / parole on the following occasions:

| PSR | Date | Probation / Parole Violations |
|---|---|---|
| ¶ 32 | 12/13/2000 | Wireman violated the terms and conditions of probation. |
| ¶ 33 | 7/31/2003 | Wireman violated the terms and conditions of probation. |
| ¶ 34 | 6/20/2006 | Wireman violated the terms and conditions of probation. |
| ¶ 34 | 9/21/2006 | Wireman violated the terms and conditions of probation. |
| ¶ 34 | 9/1/2007 | Wireman violated the terms of conditions of probation |
| ¶ 35 | 8/1/2007 | Wireman violated the terms and conditions of probation |
| ¶ 38 | 6/15/2009 | Wireman's probation revoked and jail imposed. |
| ¶ 39 | 7/12/2010 | Wireman's work release revoked and sent to prison. |
| ¶ 39 | 9/24/2013 | Wireman violated the terms of conditions of parole. |
| ¶ 39 | 10/21/2014 | Wireman absconded from parole and warrant issued. |
| ¶ 44 | 10/20/2016 | Wireman violated the terms of conditions of probation |
| ¶ 44 | 12/19/2017 | Wireman violated the terms and conditions of probation |
| ¶ 46 | 10/11/2018 | Wireman's probation revoked and jail imposed. |
| ¶ 47 | 12/11/2020 | Wireman's probation revoked and jail imposed. |
| ¶ 50 | 6/23/2021 | Wireman's probation revoked and jail imposed. |

(R.16: Final PSR, PageID# 82-89.).

Furthermore, while imprisoned, Wireman has had numerous disciplinary violations, including threatening unauthorized use of property, refusing an order on three occasions, unauthorized use on two occasions, mailing unauthorized correspondence, and insolent, vulgar, profane behavior. (*Id.*, PageID# 86).

The government notes that a defendant's misconduct while in custody supports an upward variance when combined with other relevant considerations. *United States v. Burkey*, No. 22-3076, 2023 U.S. App. LEXIS 2196, at *21-22 (6th Cir. Jan. 27, 2023) (citing *United States v. Baines,* 651 F. App'x 411, 412, 414 (6th Cir. 2016) (observing that "Baines's inability to comply with the rules in prison reinforced his pattern of rule breaking that extended beyond the prison walls.")); *cf. United States v. Johnson*, 26 F.4th 726, 739 (6th Cir. 2022) (indicating that the defendant "ha[d] not incurred any convictions or meaningful infractions while in prison" as support for finding an upward variance unreasonable).

6

Thus, Wireman's history and characteristics alone support a 96-month prison sentence.

**B. The sentence should promote respect for the law. 18 U.S.C. §3553(a)(2)(A).**

"An individual is presumed to know the law. Thus, when a felon chooses to possess a firearm, it must be presumed he does so in conscious disregard of the law. A felon in possession of a firearm is aware that such activity is illegal, so his act of possessing weapons illustrates a knowing and willful disregard for the prohibition placed upon him." *United States v. Butler*, 165 F.R.D. 68, 72 (N.D. Ohio 1996) (quoting *United States v. Washington*, 907 F. Supp. 476, 485 (1995)).

Here, Wireman is presumed to know the law and nevertheless possessed 22 firearms in conscious disregard for the law. Consequently, the need to promote respect for the law supports a 96-month prison sentence.

**C. The sentence should reflect the seriousness of the offense. 18 U.S.C. §3553(a)(2)(A).**

The Sixth Circuit has held that offenses involving weapons are considered inherently serious. *United States v. Carnes*, 309 F.3d 950, 957 (6th Cir. 2002), cert. denied, 537 U.S. 1240 (2003) ("The district court considered possession of a firearm by a felon . . . to be serious . . . and we agree.")).

Here, after being convicted of a felony, Wireman possessed 22 firearms, including a sawed-off shotgun. Courts across the country, including the Sixth Circuit, have taken a dim view of sawed-off shotguns:

> It should go without saying that unlawfully possessing one of these "gangster-type" "weapons of war" creates a serious potential risk of physical injury. In comparison to a regular shotgun, a sawed-off shotgun is generally less, not more, accurate and has a lower range -- both of which are presumably considered drawbacks by most gun enthusiasts. However, what it lacks in accuracy and range, it more than makes up for in concealment and maneuverability. With its shorter barrel, a sawed-off

7

>shotgun can be concealed under a large shirt or coat. It is the combination of low, somewhat indiscriminate accuracy, large destructive power, and the ability to conceal that makes a sawed-off shotgun useful for only violence against another person, rather than, for example, against sport game. The potential risk for physical injury is magnified when a person unlawfully possesses a sawed-off shotgun or another one of these weapons. By doing so, that person has evinced an obvious disregard for federal and, in some cases, state law (here, Tennessee) -- never a good sign when that disregard is manifested by the act of possessing a "gangster-type weapon."

*United States v. Amos*, 501 F.3d 524, 531 (6th Cir. 2007) (McKeague, D., dissenting); *See also United States v. Serna*, 309 F.3d 859, 864 (5th Cir. 2002) (holding that "the unlawful possession a sawed-off shotgun under the Texas statute constitutes conduct that, by its nature, poses a serious potential risk of physical injury to another…"); *United States v. Brazeau*, 237 F.3d 842, 845 (7th Cir. 2001) (reasoning that "the fact that sawed-off shotguns must be registered confirms our conclusion that such weapons are inherently dangerous…"); *United States v. Hayes*, 7 F.3d 144, 145 (9th Cir. 1993) (holding that "sawed-off shotguns are inherently dangerous, lack usefulness except for violent and criminal purposes and their possession involves the substantial risk of improper physical force."); *People v. Brady*, 2017 IL App (3d) 150184-U, ¶ 22. ( "[A] sawed-off shotgun poses a heightened threat of harm as it has the ability to inflict numerous injuries by firing a single shot."); *People v. Gray*, 212 Ill. App. 3d 613, 617, 156 Ill. Dec. 705, 708, 571 N.E.2d 489, 492 (1991) ("A sawed-off shotgun has been considered among the most dangerous and threatening weapons…").

This Court should also take a dim view of sawed-off shotguns, especially when possessed by a convicted felon like Wireman. Therefore, a 96-month prison sentence is appropriate to reflect the seriousness of the offense.

**D. The sentence should afford adequate deterrence to criminal conduct. 18 U.S.C. §3553(a)(2)(B).**

Here, the need for deterrence is high because Wireman's offense conduct was not an isolated incident. Rather, Wireman has numerous prior criminal convictions, including burglary. For the burglary, Wireman received a 6-year (72 months) prison sentence, which did not deter him from committing the instant offense. If a 72-month sentence did not deter Wireman, it stands to reason that a substantially greater prison sentenced is now needed to deter Wireman from future criminal conduct.

Again, a 96-month prison sentence is appropriate to deter Wireman from future criminal conduct.

**E. The sentence should protect the public from further crimes of the defendant.**

"The risk of physical force against the person or property of another is implicit in the knowing, illegal *possession* of a firearm." *United States v. Butler*, 165 F.R.D. 68, 72 (N.D. Ohio 1996) (Emphasis added). Here, Wireman, a convicted felon, possessed 22 firearms including a sawed-off shotgun. Furthermore, Wireman has a history of engaging in violent conduct that puts the community at risk. Namely, Wireman has been convicted of, *inter alia*, burglary, auto theft, possession of methamphetamine, battery against a public safety official, obstruction of justice, domestic battery, and resisting law enforcement. (R.16: Final PSR, PageID# 82-89.).

Thus, 96-month sentence is needed to protect the community.

9

## CONCLUSION

      For the foregoing reasons, the United States respectfully requests this Court impose a 96-month prison sentence.

                                            Respectfully submitted,

                                            CAROL M. SKUTNIK
                                            ACTING UNITED STATES ATTORNEY

                              By:  */s/ Dexter Phillips*
                                            Dexter L. Phillips (0088374)
                                            Assistant United States Attorney
                                            Four Seagate, Suite 308
                                            Toledo, OH 43604
                                            Phone: (419) 259-6376
                                            Email:  Dexter.Phillips@usdoj.gov